UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

Holding a Criminal Term

Grand Jury Sworn in on November 12, 2010

| | |
|---|---|
| **UNITED STATES OF AMERICA** | : CRIMINAL NO.: |
| | : |
| v. | :  GRAND JURY ORIGINAL |
| | : |
| **SANFORD LTD.,** | : 18 U.S.C. § 371 |
| | : (Conspiracy) |
| | : |
| Defendant. | : 18 U.S.C. § 1908(a) |
| | : (Knowing Failure to Maintain an Accurate |
| | : Oil Record Book) |
| | : |
| | : 18 U.S.C. § 1519 |
| | : (Falsification of Records) |
| | : |
| | : 18 U.S.C. § 1505 |
| | : (Obstruction of Justice) |
| | : |
| | : 33 U.S.C. §§ 1907(a), 1908(a) |
| | : (Discharge Without Operating Oil |
| | : Separating Equipment) |
| | : |
| | : 18 U.S.C. § 2 |
| | : (Aiding and Abetting) |
| | : |
| | : 18 U.S.C. § 981(a)(1)(C) |
| | : (Criminal Forfeiture) |

# INDICTMENT

The Grand Jury charges:

At all times material to this Indictment,

**A.     THE CORPORATE DEFENDANT**

1. Defendant **SANFORD LTD**. was a New Zealand corporation with offices at 22 Jellicoe Street, Freemans Bay, Auckland 1010, New Zealand.  Defendant **SANFORD LTD**., acting through its agents and employees, who were acting within the scope of their agency and employment and for the intended benefit, at least in part, of Defendant **SANFORD LTD**., owned and operated the fishing vessel *San Nikunau* (hereinafter "*F/V San Nikunau*").

**B.     THE FISHING VESSEL SAN NIKUNAU**

1. The *F/V San Nikunau*, a 1,957 gross ton vessel, registered under the flag administration of New Zealand and bearing the International Maritime Organization number 8131441, was owned and operated by **SANFORD LTD**.  The *F/V San Nikunau* was engaged in international commercial maritime operations and transported fish to ports in the United States of America, including Pago Pago, American Samoa, and elsewhere.

2. The *F/V San Nikunau* had an Engine Department headed by a Chief Engineer assisted by a First Assistant Engineer.  The Engineers were assisted by laborers known as "oilers."  The Chief Engineer reported directly to the Master of the vessel and had overall responsibility for the operations of the Engine Department, including the supervision of daily operations, formulation and implementation of Engine Department procedures, and verification that all systems, including the Oil Water Separator, were functioning properly.

3. As set forth in the following table, Defendant **SANFORD LTD**. gained, during the time period relevant in this indictment, revenues of $24,862,954.89 for the offload of fish cargo

from the *F/V San Nikunau* in American Samoa, even though the vessel was not in compliance with international and United States law and therefore could have been prevented from entering American Samoa and offloading fish cargo:

| Date | Amount paid for cargo |
|---|---|
| March 2007 | $1,014,328.93 |
| August 2007 | $1,223,084.42 |
| October 2007 | $1,855,367.19 |
| December 2007 | $1,967,693.29 |
| January 2008 | $270,703.53 |
| February 2008 | $1,181,764.49 |
| May 2008 | $1,950,794.56 |
| July 2008 | $2,656,741.92 |
| September 2008 | $2,230,398.55 |
| December 2008 | $989,443.16 |
| March 2009 | $1,420,819.94 |
| May 2009 | $1,139,736.58 |
| August 2009 | $1,691,389.99 |
| November 2009 | $368,587.15 |
| April 2010 | $1,095,359.07 |
| July 2010 | $1,206,353.89 |
| August 2010 | $579,639.65 |
| July 2011 | $2,020,748.58 |

all of which constitutes a gain pursuant to the Alternative Fines Act, 18 U.S.C. § 3571, and is forfeitable pursuant to 18 U.S.C. §§ 981(a)(1)(C) & 1956(c)(7)(E).

### C. LEGAL FRAMEWORK

1. The United States is part of an international regime that regulates discharges of oil from vessels at sea: the International Convention for the Prevention of Pollution from Ships, as modified by the Protocol of 1978 (the "MARPOL Protocol"). The MARPOL Protocol was enacted into United States law by the Act to Prevent Pollution from Ships (APPS), Title 33, United States Code, Sections 1901, et seq. APPS makes it a crime for any person to knowingly violate the MARPOL Protocol, APPS, or regulations promulgated under APPS. The regulations promulgated under APPS apply to all commercial vessels over 400 gross tons operating in United States waters or while at a port or terminal under the jurisdiction of the United States, including vessels operating under the authority of a country other than the United States. 33 C.F.R. § 151.09(a)(5). The waters surrounding American Samoa are subject to the jurisdiction of the United States. *See* 48 U.S.C. §§ 1661, 1662, 1704; 33 C.F.R. §§ 2.36 & 2.38. All crimes alleged in this Indictment took place within the waters of American Samoa, within the navigable waters and jurisdiction of the United States, but out of the jurisdiction of any particular State or district, and, pursuant to Title 18, United States Code, Section 3238, within the venue of the United States District Court for the District of Columbia.

2. On large fishing vessels, bilge waste accumulates in bilge wells, the bottommost part of the vessel. Periodically this waste is pumped into a bilge holding tank. Bilge waste consists of water originating from spills and leaks from piping, tanks, or from rain and waves. This waste may be contaminated with oil, oil residue, lubrication fluids, and other liquids that leak or drip from engines or pipes and hoses that run throughout the ship. In order to maintain bilges at safe

4

levels, bilge tanks and wells must be periodically emptied.  This can be done in one of two ways: (1) bilge waste can be discharged ashore to a waste reception facility or, (2) it may be pumped over the side of the ship after being processed through a properly functioning Oil Water Separator.  Pursuant to MARPOL and APPS, oil-contaminated wastes may be discharged overboard into the ocean only if they contain 15 parts per million ("ppm") or less concentration of oil.  MARPOL Protocol Regulation 15, 33 C.F.R. § 151.10.  The principal technology utilized to lower the oil content of oil-contaminated waste is an Oil Water Separator, which includes an Oil Content Monitor to detect and prevent concentrations of oil in excess of 15 ppm from being discharged overboard.

   3. Consistent with the requirements contained in MARPOL, APPS regulations require that a non-oil tanker ship of 400 gross tons and above maintain a record known as an Oil Record Book in which all disposals of oil residue and the discharge overboard or disposal otherwise of bilge waste and sludge that have accumulated in the machinery spaces must be recorded. 33 C.F.R. § 151.25(d).  Specifically, discharges of bilge waste, sludge, and oily mixtures must be fully recorded, without delay, in the Oil Record Book by the person in charge of the operations. *Id*.  The Oil Record Book also must contain entries concerning any emergency, accidental, or other exceptional discharges of oil or mixtures.  33 C.F.R. § 151.25(g).  The Oil Record Book must be maintained onboard the vessel for not less than three years, and be readily available for inspection at all reasonable times.  33 C.F.R. § 151.25.

   4. The United States Coast Guard, an agency of the United States Department of Homeland Security, is charged with enforcing the laws of the United States and is empowered under 14 U.S.C. § 89(a) to board vessels and conduct inspections and investigations of potential violations of international and United States law, including MARPOL and APPS.  In conducting

inspections, commonly known as Port State Control inspections, United States Coast Guard personnel rely on the statements of the vessel's crew and documents, including information contained in the Oil Record Book. The United States Coast Guard is specifically authorized to examine the vessel's Oil Record Book to determine, among other things, whether the vessel has operable pollution prevention equipment and appropriate procedures, whether it poses any danger to United States' ports and waters, and whether the vessel has discharged any oil or oily mixtures in violation of MARPOL, APPS, or any applicable federal regulations. 33 C.F.R. §§ 151.23(a)(3) and (c). If the United States Coast Guard finds evidence that a vessel is not in substantial compliance with MARPOL or APPS, the United States Coast Guard is empowered to deny a vessel's entry into a United States' port or detain the vessel until it is determined that the vessel does not present an unreasonable threat to the marine environment. 33 C.F.R. §§ 151.07(b) and 151.23(b).

  **D.**  **THE CRIMINAL CHARGES**

**COUNT ONE**
(Conspiracy - 18 U.S.C. § 371)

  **1.**  Sections A through C of this Indictment are specifically incorporated and re-alleged herein.

  **2.**  **OBJECTIVE OF THE CONSPIRACY**

Beginning at a time unknown, but no later than on or about November 25, 2006, until on or about July 15, 2011, within the navigable waters, internal waters and ports of the United States in the United States territory of American Samoa, the Defendant,

**SANFORD LTD.**,

acting through its agents and employees, who were acting within the scope of their agency and employment, and for the intended benefit, at least in part, of Defendant **SANFORD LTD.**, and others known and unknown to the Grand Jury, did knowingly and willfully conspire, confederate and agree with each other and with other persons known and unknown to the Grand Jury to:

      A.      knowingly fail to maintain an Oil Record Book for the *F/V San Nikunau* in which all operations involving the transfer of oil and oily waste water, including all overboard discharges of oil-contaminated bilge waste, were fully recorded, and falsely recorded that the Oil Water Separator was used when it was not, in violation of Title 33, United States Code, Section 1908(a); and Title 33, Code of Federal Regulations, Sections 151.25(a) and 151.25(h).

      **3.**      **MANNER AND MEANS**

Among the manner and means used by Defendant **SANFORD LTD.**, acting through its agents and employees, who were acting within the scope of their agency and employment, and for the intended benefit, at least in part, of Defendant **SANFORD LTD.**, to effectuate this conspiracy and to further its objectives were the following:

      A.      Defendant owned, operated, and managed the *F/V San Nikunau*, knowing the vessel was carrying a false Oil Record Book from on or about November 25, 2006 until on or about July 15, 2011; and

      B.      Defendant knowingly covered up the fact that oily bilge waste was routinely discharged from the *F/V San Nikunau* without using required pollution prevention equipment from on or about November 25, 2006, until on or about July 15, 2011, by failing to record the discharges in the Oil Record Book.

      C.      Defendant regularly and routinely used, and directed the use of, eductors, hoses, and pumps to discharge oily bilge waste from machinery spaces on the vessel directly into the

sea, including discharging oily bilge waste onto the wet deck of the vessel where tuna and other fish are sorted and processed.

**4.     OVERT ACTS IN FURTHERANCE OF THE CONSPIRACY**

On or about the dates below and in furtherance of the conspiracy and to effect the object thereof, there was committed and caused to be committed by Defendant **SANFORD LTD.**, acting through its agents and employees, who were acting within the scope of their agency and employment, and for the intended benefit, at least in part, of Defendant **SANFORD LTD.**, at least one of the following overt acts, among others:

A.  During fishing voyages ending in Pago Pago, American Samoa, on the following dates as listed in the table below, the Defendant **SANFORD LTD.**, and other members of the conspiracy, directed subordinates to discharge and caused the discharge of machinery space bilge waste from the *F/V San Nikunau* directly overboard into the sea, bypassing the ship's Oil Water Separator and other required pollution prevention equipment without recording the discharge into the vessel's Oil Record Book as required:

| OVERT ACT | DATE |
|---|---|
| 1 | November 25, 2006 |
| 2 | March 7, 2007 |
| 3 | August 10, 2007 |
| 4 | September 27, 2007 |
| 5 | October 21, 2007 |
| 6 | November 30, 2007 |
| 7 | January 12, 2008 |

|  |  |
|---|---|
| 8 | April 24, 2008 |
| 9 | July 1, 2008 |
| 10 | September 13, 2008 |
| 11 | December 9, 2008 |
| 12 | January 11, 2009 |
| 13 | March 4, 2009 |
| 14 | May 3, 2009 |
| 15 | July 18, 2009 |
| 16 | September 15, 2009 |
| 17 | April 5, 2010 |
| 18 | July 9, 2010 |
| 19 | August 17, 2010 |
| 20 | July 14, 2011 |

C. Defendant **SANFORD LTD**., and other members of the conspiracy, caused the *F/V San Nikunau* to enter the navigable waters, internal waters and ports of the United States in the United States territory of American Samoa with a knowingly falsified Oil Record Book on or about the following dates:

| OVERT ACT | DATE |
|---|---|
| 21 | November 25, 2006 |
| 22 | March 7, 2007 |
| 23 | August 10, 2007 |

| | |
|---|---|
| 24 | September 27, 2007 |
| 25 | October 21, 2007 |
| 26 | November 30, 2007 |
| 27 | January 12, 2008 |
| 28 | April 24, 2008 |
| 29 | July 1, 2008 |
| 30 | September 13, 2008 |
| 31 | December 9, 2008 |
| 32 | January 11, 2009 |
| 33 | March 4, 2009 |
| 34 | May 3, 2009 |
| 35 | July 18, 2009 |
| 36 | September 15, 2009 |
| 37 | April 5, 2010 |
| 38 | July 9, 2010 |
| 39 | August 17, 2010 |
| 40 | July 14, 2011 |

**OVERT ACT 41**.  On or about July 15, 2011, the First Mate (A.K.A. "Navigator") of the *F/V San Nikunau* instructed a crewmember while in the galley of the vessel, in sum and substance, to falsely tell United States Coast Guard personnel that only water is pumped overboard from the vessel.

**OVERT ACT 42**.  On or about July 15, 2011, the First Mate (A.K.A. "Navigator") of the *F/V San Nikunau* instructed a crewmember during a vehicle ride to a Coast Guard office, in sum and substance, to falsely tell United States Coast Guard personnel that only water is pumped overboard from the vessel.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO
(Knowing Failure to Maintain Accurate Oil Record Book – Act to Prevent Pollution from Ships, 33 U.S.C. § 1908(a))

1.  Sections A through C of this Indictment are specifically incorporated and re-alleged herein.

2.  On or about July 9, 2010, within the navigable waters, internal waters and ports of the United States in the United States territory of American Samoa, the Defendant,

**SANFORD LTD.**,

acting through its agents and employees, who were acting within the scope of their agency and employment, and for the intended benefit, at least in part of Defendant **SANFORD LTD.**, did knowingly fail to maintain an Oil Record Book for the *F/V San Nikunau* in which all disposals of oil residue, overboard discharges, and disposals of bilge water were required to be fully recorded.  Specifically, the Defendant maintained an Oil Record Book that (1) failed to disclose overboard discharges of oily bilge waste without the use of a properly functioning Oil Water Separator and oil monitoring equipment and falsely stated the Oil Water Separator was used when in fact it was not; and (2) failed to account for internal transfers of oily bilge waste from machinery spaces to other areas of the ship.

All in violation of Title 33, United States Code, Section 1908(a), Title 18, United States Code, Section 2, and Title 33, Code of Federal Regulations, Section 151.25.

**COUNT THREE**
(Falsification of Records – 18 U.S.C. § 1519)

1. Sections A through C of this Indictment are specifically incorporated and re-alleged herein.

2. During a fishing voyage ending on or about July 9, 2010, terminating in and within the navigable waters, internal waters and ports of the United States in the United States territory of American Samoa, the Defendant,

**SANFORD LTD.**,

acting through its agents and employees, who were acting within the scope of their agency and employment, and for the intended benefit, at least in part, of Defendant **SANFORD LTD.**, with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of a department and agency of the United States, namely the United States Coast Guard and the Department of Homeland Security, both of which are located in the District of Columbia, and in relation to and in contemplation of such matter, namely, a Port State Control vessel examination and inspection to determine compliance with MARPOL and United States law, did knowingly conceal, cover up, and falsify, and make a false entry in a record and document, that is, a false, fictitious and misleading Oil Record Book for the *F/V San Nikunau* that concealed the overboard discharge of oil contaminated waste and contained entries falsely stating that required pollution prevention equipment had been used when it had not.

All in violation of Title 18, United States Code, Section 1519, and Title 18, United States Code, Section 2.

**COUNT FOUR**
(Knowing Failure to Maintain Accurate Oil Record Book – Act to Prevent Pollution from Ships, 33 U.S.C. § 1908(a))

1. Sections A through C of this Indictment are specifically incorporated and re-alleged herein.

2. On or about July 14, 2011, within the navigable waters, internal waters and ports of the United States in the United States territory of American Samoa, the Defendant,

**SANFORD LTD.**,

acting through its agents and employees, who were acting within the scope of their agency and employment, and for the intended benefit, at least in part of, Defendant **SANFORD LTD.**, did knowingly fail to maintain an Oil Record Book for the *F/V San Nikunau* in which all disposals of oil residue, overboard discharges, and disposals of bilge water were required to be fully recorded. Specifically, the Defendant maintained an Oil Record Book that (1) failed to disclose overboard discharges of oily bilge waste without the use of a properly functioning Oil Water Separator and oil monitoring equipment and falsely stated the Oil Water Separator was used when in fact it was not; and (2) failed to account for internal transfers of oily bilge waste from machinery spaces to other areas of the ship.

All in violation of Title 33, United States Code, Section 1908(a), Title 18, United States Code, Section 2, and Title 33, Code of Federal Regulations, Section 151.25.

## COUNT FIVE
(Falsification of Records – 18 U.S.C. § 1519)

1. Sections A through C of this Indictment are specifically incorporated and re-alleged herein.

2. During a fishing voyage ending on or about July 14, 2011, terminating in and within the navigable waters, internal waters and ports of the United States in the United States territory of American Samoa, the Defendant,

**SANFORD LTD.**,

acting through its agents and employees, who were acting within the scope of their agency and employment, and for the intended benefit, at least in part, of Defendant **SANFORD LTD.**, with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of a department and agency of the United States, namely the United States Coast Guard and the Department of Homeland Security, both of which are located in the District of Columbia, and in relation to and in contemplation of such matter, namely, a Port State Control vessel examination and inspection to determine compliance with MARPOL and United States law, did knowingly conceal, cover up, and falsify, and make a false entry in a record and document, that is, a false, fictitious and misleading Oil Record Book for the *F/V San Nikunau* that concealed the overboard discharge of oil contaminated waste and contained entries falsely stating that required pollution prevention equipment had been used when it had not.

All in violation of Title 18, United States Code, Section 1519, and Title 18, United States Code, Section 2.

**COUNT SIX**
(Obstruction of Justice – 18 U.S.C. § 1505)

1. Sections A through C of this Indictment are specifically incorporated and re-alleged herein.

2. On or about July 15, 2011, within the navigable waters, internal waters and ports of the United States in the United States territory of American Samoa, the Defendant,

**SANFORD LTD.**,

acting through its agents and employees, who were acting within the scope of their agency and employment, and for the intended benefit, at least in part, of Defendant **SANFORD LTD.**, did corruptly influence, obstruct and impede, and endeavor to influence, obstruct, and impede the due and proper administration of the law under a pending proceeding by the United States Coast Guard and the Department of Homeland Security, to wit, during a vessel inspection of the *F/V San Nikunau* to determine the vessel's compliance with MARPOL and United States law, falsely stated to United States Coast Guard personnel that oily bilge waste was not directly discharged overboard from the vessel and the Oil Water Separator was being properly used on the vessel.

All in violation of Title 18, United States Code, Section 1505, and Title 18, United States Code, Section 2.

## COUNT SEVEN
(Discharge Without Operating Oil Separating Equipment – Act to Prevent Pollution from Ships, 33 U.S.C. § 1907(a) & 1908(a))

1. Sections A through C of this Indictment are specifically incorporated and re-alleged herein.

2. On or about July 15, 2011, and within the navigable waters of the United States in the United States territory of American Samoa, the Defendant,

**SANFORD LTD.**,

acting through its agents and employees, who were acting within the scope of their agency and employment, and for the intended benefit, at least in part, of Defendant **SANFORD LTD.**, did knowingly discharge machinery space bilge waste overboard without verifying that the oil content of the effluent did not exceed 15 parts per million oil to water and without having in operation properly functioning oily water separating equipment including a 15 parts per million bilge alarm.

All in violation of Title 33, United States Code, Section 1908(a), Title 18, United States Code, Section 2, and Title 33, Code of Federal Regulations, Section 151.10(b).

## FORFEITURE ALLEGATION

1. The violations alleged in Counts One, Two, Four, and Seven of this Indictment are re-alleged and incorporated by reference herein for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

2. As a result of the offenses alleged in Counts One, Two, Four, and Seven of this Indictment, Defendant **SANFORD LTD.** shall forfeit to the United States any property

constituting, or derived from, proceeds obtained directly or indirectly, as the result of the offenses alleged in Counts One, Two, Four, and Seven, including, but not limited to:

<u>Money Judgment</u>:

judgment in favor of the United States of America for the sum of at least $24,862,954.89, which represents a sum of money equal to property constituting, or derived from, proceeds obtained, directly or indirectly, as the result of the offenses alleged in Counts One, Two, Four, and Seven of this Indictment.

3. By virtue of the commission of the felony offenses charged in Counts One, Two, Four, and Seven of this Indictment, any and all interest that Defendant has in property constituting, or derived from, proceeds obtained directly or indirectly, as the result of such offenses is vested in the United States and hereby forfeited to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

4. If, as a result of any act or omission of the Defendant, the property identified above:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third person;

    (c) has been placed beyond the jurisdiction of the Court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property that cannot be subdivided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b)(1), incorporating by reference Title 21, United States Code, Section 853(p), to seek

forfeiture of any other property of the said Defendant **SANFORD LTD**. up to the value of said property listed above as being subject to forfeiture.

(Criminal Forfeiture, in violation of Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c)).

A TRUE BILL


FOREPERSON



Attorney of the United States in
and for the District of Columbia