UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**
APR 10 2012
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

UNITED STATES OF AMERICA,

v.

SANFORD, LTD., *et al.*,

Defendants.

Criminal Case No. 11-cr-352 (BAH)
Judge Beryl A. Howell

**SEALED**

## MEMORANDUM OPINION

Pending before the Court is the defendants' Motion to Depose Unavailable Witnesses, ECF No. 70, which requests the Court to authorize, pursuant to FED. R. CRIM. P. 15(a)(1), the pre-trial depositions of five witnesses who are allegedly unavailable to testify at trial. The defendants requested expedited consideration of this motion since three of the witnesses they seek to depose are employed aboard the *F/V San Nikunau*, a fishing vessel that will depart from New Zealand for deep sea fishing in the third week of April. After this ship departs New Zealand, the defendants contend that they "do not know when or where [they] may be able to depose [the witnesses]." Defs.' Mot. Expedite, ECF No. 65, at 1. Accordingly, the Court granted the defendants' motion to expedite the Court's consideration of their motion to depose witnesses. Minute Order dated Mar. 28, 2012. For the reasons explained below, the defendants' motion to depose unavailable witnesses is DENIED in part and GRANTED in part.

I.  BACKGROUND

On January 5, 2012, a grand jury returned a superseding indictment charging three Defendants – Sanford Ltd. ("Sanford"), a shipping company that owns and operates the fishing vessel *F/V San Nikunau*; and two individuals, James Pogue and Rolando Ong Vano, who served

at different times as the Chief Engineer of the ship – with violating federal criminal laws when they allegedly discharged oil-contaminated sludge and bilge waste into the ocean and falsified records relating to these discharges. The investigation that led to these charges arose from a United States Coast Guard inspection of the *F/V San Nikunau* at Pago Pago, American Samoa in July 2011. The government has now charged the defendants, in seven counts, with conspiracy, in violation of 18 U.S.C. § 371; failing to maintain an accurate oil record book, in violation of 33 U.S.C. § 1908(a), 18 U.S.C. § 2 and 33 C.F.R. 151.25; falsification of records, in violation of 18 U.S.C. § 1519; obstruction of justice, in violation of 18 U.S.C. §§ 1505 and 2; and unlawful discharge of oil waste, in violation of 33 U.S.C. §§ 1907(a) and 1908(a), 18 U.S.C. § 2 and 33 C.F.R. 151.10(b).

## II.  LEGAL STANDARD

Federal Rule of Criminal Procedure 15(a)(1) provides that a party may move to depose witnesses "in order to preserve testimony for trial." The purpose of Rule 15, however, is "not to provide a method of pretrial discovery." *United States v. Straker*, 567 F. Supp. 2d 174, 180 (D.D.C. 2008) (quoting *United States v. Kelley*, 36 F.3d 1118, 1124 (D.C. Cir. 1994)). "There is a distinct preference for having witnesses in criminal trials present for the jury to view, to assess, themselves confront. The concept of having depositions is an inferior technique for presenting these witnesses to a jury." *United States v. Ismaili*, 828 F.2d 153, 156 (3d Cir. 1987) (quoting unpublished district court opinion and affirming the district court's decision denying motion for pre-trial depositions); *see also* Fed. R. Crim. P. 15 Advisory Committee's Note to 1975 Amendment (explaining that the Advisory Committee "narrowed" the definition of "unavailable" because it "does not want to encourage the use of depositions at trial, especially in view of the importance of having live testimony from a witness on the stand."). For this reason, depositions

are permitted in criminal matters under Rule 15(a)(1) only if the proponent of the deposition demonstrates "exceptional circumstances" and that the deposition is "in the interest of justice."[1] FED. R. CRIM. P. 15(a)(1); *Straker*, 567 F. Supp. 2d at 180 (quoting *Kelley*, 36 F.3d at 1124); *see also United States v. Warren*, 713 F. Supp. 2d 1, 3 (D.D.C. 2010) ("Rule 15 permits depositions in a criminal case to preserve testimony, not to foster discovery, and only in exceptional situations.").

The Federal Rules of Criminal Procedure provide no definition for either condition of "exceptional circumstances" or "in the interests of justice" for the grant of pre-trial depositions in a criminal case. Based upon the evolution of changes to Rule 15, courts have construed these conditions as requiring a defendant seeking depositions to "(1) establish that the testimony sought is material, (2) prove that the witnesses are unavailable to testify at trial, and (3) make some showing, beyond unsubstantiated speculation, that the evidence exculpates him." *Straker*, 567 F. Supp. 2d at 180 (quoting *Kelley*, 36 F.3d at 1125) (internal quotation marks omitted); *see also Ismaili*, 828 F.2d at 159 ("[A]lthough witness availability and the immateriality of proposed testimony to be obtained through depositions are not rigid or automatic grounds for the denial of a 15(a) motion as they once were, it is nonetheless evident that the post-amendment case law defining 'exceptional circumstances' and 'interests of justice' still focuses on those considerations."); *United States v. Njock Eyong*, No. 06-cr-305, 2007 WL 1576309, at *2 (D.D.C. May 30, 2007).

A witness's unavailability in the context of FED. R. CRIM. P. 15(a)(1) is "defined by reference to Federal Rule of Evidence 804(a), which provides, in relevant part, that a witness is unavailable if he or she is 'absent from the hearing and the proponent of a statement has been

---

[1] FED. R. CRIM. P. 15(a)(1) further provides that "[i]f the court orders the deposition to be taken, it may also require the deponent to produce at the deposition any designated material that is not privileged, including any book, paper, document, record, recording, or data."

3

unable to procure the declarant's attendance . . . by process or other reasonable means.'" *Warren*, 713 F. Supp. 2d at 4 (quoting *Straker*, 567 F. Supp. 2d at 180); *see also United States v. Aguilar-Tamayo*, 300 F.3d 562, 565 (5th Cir. 2002). "A witness who resides abroad and outside the reach of a court's subpoena power is not automatically 'unavailable' without a further showing that he or she will not testify in court." *Warren*, 713 F. Supp. 2d at 4. "Unavailability is to be determined according to the practical standard of whether under the circumstances the [party seeking to take the deposition] has made a good-faith effort to produce the person to testify at trial." *United States v. Johnpoll*, 739 F.2d 702, 709 (2d Cir. 1984).

Rule 15 further requires that the evidence provided by an unavailable witness, whom a defendant seeks to depose pre-trial, be material and exculpatory. In assessing these requirements, courts have applied the standards for material and exculpatory information developed in the caselaw interpreting *Brady v. Maryland*, 373 U.S. 83 (1963). *See, e.g., United States v. Jefferson*, 594 F. Supp. 2d 655, 667 (E.D. Va. 2009) ("In the Rule 15 context, 'materiality has the same meaning the Supreme Court gave the term in *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny, namely, that the evidence or testimony must be exculpatory, and not corroborative or cumulative of other evidence,'" quoting *United States v. Rosen*, 240 F.R.D. 204, 209 (E.D. Va. 2007) (internal quotations and citations omitted)); *United States v. Hajbeh*, 284 F. Supp. 2d 380, 383-84 (E.D. Va. 2003) (same); *see generally United States v. Ionia Mgmt. S.A.*, No. 03:07-cr-134, 2007 WL 2325199, at *10 (D. Conn. Aug. 9, 2007). Under *Brady*, the government's failure to disclose material exculpatory evidence to a defendant violates that defendant's right to due process. *Smith v. Cain*, 132 S.Ct. 627, 630 (2012). "[E]vidence is 'material' within the meaning of *Brady* when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Id.* (quoting

*Cone v. Bell*, 556 U.S. 449, 469-70 (2009); *United States v. Moore*, 651 F.3d 30, 99 (D.C. Cir. 2011). "A reasonable probability does not mean that the defendant would more likely than not have received a different verdict with the evidence, only that the likelihood of a different result is great enough to undermine confidence in the outcome of the trial." *Smith*, 132 S.Ct. at 630 (internal quotation marks, alterations, and citations omitted).

### III. DISCUSSION

The defendants seek leave to depose five witnesses: three crewmembers of the *F/V San Nikunau* who were aboard the vessel at the time of its last voyage; and two chief engineers who were previously employed by defendant Sanford, Ltd. and served aboard the vessel. All five of these individuals are foreign nationals and reside abroad. Consequently, they are beyond the reach of this Court's subpoena power.

The government argues that the Court should not permit depositions of these witnesses, despite the fact that the Court cannot subpoena them to testify, because the defendants have failed to demonstrate that the witnesses are unavailable for trial, or that their potential testimony is material or exculpatory. As explained below, the Court agrees that the defendants have failed to demonstrate the "exceptional circumstances" necessary to allow deposition of two of the proposed witnesses: Messrs. Alejandro Braceras and Raymond Ian Scott. The remaining three witnesses whom the defendants seek to depose – Messrs. Larry Verbe Baguinben, Manual Gulliman, and Moana Tai Eric Fredricsen – however, are unavailable to testify at trial and may provide material, exculpatory information. Accordingly, the Court will permit the pre-trial depositions of these three individuals but under certain conditions as outlined below.

### A. Deposition of Three *F/V San Nikunau* Crewmembers

The defendants seek to depose *F/V San Nikunau* crewmembers Larry Verbe Baguinben, Manual Gulliman, and Moana Tai Eric Fredricsen, all of whom were aboard the vessel at the time the defendants allegedly discharged oil-contaminated sludge and bilge waste into the ocean.

Both Messrs. Baguinben and Gulliman are Philippines nationals who, according to the defendants, served as engine room oilers on the *F/V San Nikunau*. In declarations provided to the Court, they assert that they did not commit or observe illegal discharge of waste into the ocean. They further represent, without explanation or justification, that they will not travel to the United States to testify at trial, even though defendant Sanford agreed to pay all of their expenses associated with this testimony. Defs.' Mot. Depose, ECF No. 70, Ex. 2, Decl. Larry Verbe Baguinben ("Baguinben Decl."), ¶¶2-3, Ex. 3, Decl. Manual Gulliman ("Gulliman Decl."), ¶¶ 2-3; Defs.' Reply, ECF No. 79, Ex. 2, Decl. Martin de Beer, ¶¶ 6-7.

The defendants also seek to depose Moana Fredricsen, who is the *F/V San Nikunau*'s first mate and navigator. The government has identified Mr. Fredricsen as the "first mate (A.K.A. 'navigator')" referenced in Overt Acts 41 and 42 in the Superseding Indictment, which allege that this individual instructed crewmembers "in the galley on the vessel" and "during a vehicle ride to a Coast Guard office" to make false statements to the Coast Guard during the course of the Coast Guard's investigation. Superseding Indictment, ECF No. 22, at 12; Gov't's Opp'n Mot. Depose, ECF No. 76, at 7 ("It was not until later that the government learned that [Mr. Fredricsen] had instructed crew members to lie, which resulted in Over Acts 41 and 42 in the Superseding Indictment."). In his declaration, Mr. Fredricsen states that these allegations are "not true" and that he "told no one to lie but rather to tell what they knew." Defs.' Mot. Depose, ECF No. 70, Ex. 4, Decl. Moana Fredricsen ("Fredricsen Decl."), ¶ 2. Mr. Fredricsen further

states, without explanation or justification, that he "will not travel to the United States to testify at trial or in any proceedings," even though Sanford Ltd. agreed to pay all of his expenses associated with this testimony. Defs.' Reply, ECF No. 79, Ex. 1, Decl. Roy Joseph Dillon Hall, ¶¶ 6-7; Fredricsen Decl., ¶ 3.

The defendants argue that it is in the best interests of justice to allow the deposition of these three individuals because they have refused to testify at trial and will provide material, exculpatory information. The government, however, disputes that the defendants have met the requirements of Rule 15. For the reasons stated below, the Court will grant the defendants' motion as to the three crewmembers and allow their depositions.

### 1. The Three Crewmembers of the F/V San Nikunau are Unavailable

The three crewmembers whom the defendants seek to depose are foreign nationals living outside the United States, and are thus beyond the reach of these Court's subpoena power. "A witness who resides abroad and outside the reach of a court's subpoena power," however, "is not automatically 'unavailable' without a further showing that he or she will not testify in court." *Warren*, 713 F. Supp. 2d at 4. In this case, Messrs. Baguinben, Gulliman, and Fredricsen each state in their declarations that they will not come to the United States to testify at trial.[2] These averments are strong support for the defendants' showing that the witnesses are unavailable. *See id.* at 4 ("Evidence that a witness specifically refuses to testify at trial is potent proof of

---

[2] The declarations from Messrs. Baguinben, Gulliman, and Fredricsen supplied in support of the defendants' instant motion stated that these individuals "did not wish to go to the United States." Baguinben Decl., ¶ 3; Gulliman Decl., ¶ 3; Fredricsen Decl., ¶ 3. The defendants, however, supplemented these declarations in their Reply with a declaration from Martin de Beer, a representative of defendant Sanford, who stated that he requested Messrs. Baguinben, Gulliman, and Fredricsen to testify and offered, on behalf of defendant Sanford, to pay for their expenses but these witnesses informed him "that even if Sanford Ltd. paid all expenses . . . they were unwilling to travel to the United States to testify at trial." Defs.' Reply, ECF No. 79, Ex. 2, Decl. Martin de Beer, ¶ 6; *see also id.* ¶¶ 10-11. The defendants further supplied a declaration from Roy Joseph Dillon Hall, Jr., Mr. Fredricsen's attorney, who stated that "Mr. Fredricsen will not travel to the United States to testify at trial . . . even if his travel expenses are paid . . . ." Defs.' Reply, ECF No. 79, Ex. 3, Decl. Roy Joseph Dillon, Jr., ¶ 6.

unavailability for purposes of Rule 15(a) . . . ."). The government disputes that the witnesses are unavailable for trial for two reasons. First, the government notes that no trial date has yet been scheduled so "determining whether a prospective witness is available for a trial date not yet scheduled cannot be established." Gov't's Opp'n Mot. Depose, ECF No. 76, at 9. This argument overlooks the fact that the three crewmembers make clear that they will not come to the United States to testify at trial whenever the trial date is set.

Second, the government argues that the Court should not deem the crewmembers unavailable for trial, despite their declarations, because "there has been no showing that Defendants have taken all reasonable measures to secure their appearance . . . ." *Id.* In support of this argument, the government points out various provisions to which defendant Sanford agreed in the Agreement on Security with the United States. Gov't's Opp'n Mot. Depose, ECF No. 76, Ex. F. Specifically, defendant Sanford is required to, *inter alia*, facilitate service of process to any officer or crewmember; encourage them to "cooperate with the United States in carrying out its investigation and appearing for their scheduled testimony;" "work with the United States to arrange for the testimony of . . . Mr. Moanatai Fredricsen, [and] Mr. Larry Baguinben . . . before a Grand Jury or other judicial or administrative proceeding arising from the Alleged Violations;" and request that the "ship's officers and crewmembers . . . surrender their passports to the Owner or operator for safe keeping." *Id.* ¶¶ 4, 6, 16. The government argues that in light of defendant Sanford's obligations under this agreement and purported interest in obtaining the testimonies of these witnesses, "Defendant Sanford Ltd. could direct that [its employees] go to Washington D.C. as a condition of [their] employment." Gov't's Opp'n Mot. Depose, ECF No. 76, at 10.[3]

---

[3] The government contends that "Defendant Sanford Ltd. has not demonstrated that it has acted in accordance with the Agreement on Security to encourage these current and former employees to come to the United States for trial."

Defendant Sanford counters that it has already offered to pay for all expenses associated with travel to Washington, D.C. Even with this offer of an all-expenses paid trip to Washington, D.C. for trial, Messrs. Baguinben,[4] Gulliman, and Fredricsen persist in declining to travel to the United States to testify at trial. Defs.' Reply, ECF No. 79, Ex. 2, Decl. Martin De Beer, ¶¶ 5, 6; Ex. 3, Decl. Roy Joseph Dillon Hall, ¶¶ 6-7. *Cf. Warren*, 713 F. Supp. 2d at 4 (finding that the potential witnesses were 'unavailable' but stating that "it is unclear what efforts defendant has made to procure these witnesses' attendance at trial, beyond asking whether they would be willing to testify. For example, defendant does not state whether he offered to pay for their travel to the United States."); *United States v. Bronston*, 321 F.Supp. 1269, 1272 (S.D.N.Y. 2001) ("The unwillingness of a witness to come to this country unless his expenses are paid does not necessarily mean that he is 'unable to attend or prevented from attending' the trial.").

Additionally, it is unclear whether defendant Sanford could specifically compel its employees to testify in a judicial proceeding, particularly when the prospective witnesses have stated both an express desire and intention not to do so. The government cites *United States v. Iona Management S.A.*, 499 F. Supp. 2d 166 (D. Conn. 2007) and *United States v. Oudovenko*, No. 00-cr-1014, 2001 WL 253027 (E.D.N.Y. Mar. 7, 2001), as support for the proposition that when the proposed witnesses for pretrial depositions are employees of the defendant, this "cuts against a finding of unavailability." Gov't's Opp'n Mot. Depose, ECF No. 76, at 9. Indeed, in

---

Gov't Opp'n Mot. Depose, ECF No. 76, at 8. The degree to which defendant Sanford has fulfilled its obligations under, and fully complied with, the terms of the Agreement on Security entered into with the United States on December 15, 2011, is a separate issue that need not be decided in consideration of the instant motion.

[4] Relying upon a December 15, 2011 email from defendant Sanford's counsel, Marshall Ashley, the government baldly asserts that "Baguinben has agreed to return to the United States for trial . . . ." Gov't's Opp'n Mot. Depose, ECF No. 76, at 9-10; *id.*, Ex. B. This assertion is simply not supported by the contents of the email, which summarizes *defendant Sanford*'s agreement, *inter alia*, to keep Baguinben, Richard Distor and John Paul Maguba under contract and keep their passports for the duration of the proceedings; bring them to Washington, D.C. if their appearances are required for trial at defendant Sanford's expense; and appoint counsel for them. *Id.* The record simply does not reflect any previous agreement by Baguinben to testify at trial in Washington, D.C. and, in any event, does not refute his current intention, as reflected in the declaration provided by the defendants, not to testify at trial.

9

both those cited cases, the courts denied the defendant's motions for Rule 15 pre-trial depositions of their foreign employees. These cases are distinguishable, however. In *Oudovenko,* unlike here, the defendant did not offer to pay travel expenses for the prospective witnesses. 2001 U.S. Dist. LEXIS 2549, at *5 (each prospective foreign employee witness stated he or she would not travel voluntarily to testify at trial but "counsel's affirmation fails to establish that . . . Oudovenko made a good faith effort to secure the presence of these witnesses at trial, such as by offering to pay their travel expenses."). Moreover, by contrast to the conditions that this Court will place on the pre-trial depositions here, in *Oudovenko* the prospective witnesses would not be subject fully to cross-examination; under the procedures required in Russia, where the witnesses could be questioned, the government "might not even be permitted to ask any of the questions." *Id.* at *8.

In *Iona Management,* the Magistrate Judge's finding that the defendant had not established the unavailability of foreign employees to testify at trial was strongly influenced by her view that the defendant had "'dragged its heels' in its trial preparation by not contacting the witnesses in question earlier." 499 F. Supp. 2d at 168. In addition, the Magistrate Judge found the defendant failed to make a good faith effort to secure the witnesses' testimony, noting, for example, that the defendant declined to make one of the witnesses available in the same country where the witness resided at the same time the government had already "voluntarily agreed to participate" in scheduled depositions. *United States v. Iona Mgmt. S.A.,* No. 03:07-cr-134, 2007 WL 2325199, at *9 (D. Conn. Aug. 9, 2007). In fact, the Magistrate Judge concluded that since the motion was filed "three weeks before trial and within days of the scheduled jury selection," it was "untimely and may be denied on the grounds of unexcused delay." *Id.* at *10. The timeliness of the defendants' motion is simply not an issue here.

Accordingly, the Court concludes that the defendants have established that the crewmember witnesses are unavailable to appear at trial.

### 2. *The Testimony Proffered by the Three Crewmembers is Material and Exculpatory*

The defendants assert that the evidence that the three crewmember witnesses will provide is material and exculpatory because these witnesses will impeach the testimony of other crewmembers who allegedly state that the defendants regularly and routinely unlawfully pumped bilge waste into the ocean. The Court agrees.

The Superseding Indictment alleges that the defendants used and directed the use of eductors, hoses and pumps for crewmembers unlawfully to discharge oily bilge waste from the ship's machinery spaces overboard and onto the wet deck of the ship, and that these acts were done "regularly and routinely." Superseding Indictment, ECF No. 22, at, *e.g.*, Count One, ¶¶ E.3.B &C. Messrs. Baguinben and Gulliman, however, deny this allegation. Mr. Baguinben states that he was never directed to pump "the bilges directly to the sea," he never did this or saw others do it. Baguinben Decl., ¶ 2. He was taught by Chief Engineer Pogue "how [to] use the main bilge pump, but only in case there was an emergency and the ship was in danger." *Id.* Mr. Gulliman similarly declares that defendant Pogue "taught the Oilers to pump the engine room bilges into the sea in the case of emergency only" and he "never heard []Pogue instruct anyone to pump the bilges to the sea," nor was he aware of anyone doing this. Gulliman Decl., ¶ 2. On the contrary, Mr. Gulliman states that the "Chief Engineer and the Assistant Engineer handled pumping the engine room bilges, by putting the bilge water through the oil water separator and the oil into the dirty oil tank." *Id.*

The government contends that the proffered testimony of these crewmembers is not material or exculpatory because their declarations are limited to what they did or did not do and

11

their personal observations. Just because they "may not have been involved in the direct dumping of the bilges into the sea, or [were] never ordered to do so, does not mean that someone else did not make illegal discharges." Gov't Opp'n Mot. Depose, ECF No. 76, at 5-6. This argument is not persuasive in this context. Messrs. Baguinben and Gulliman were aboard the vessel during the time that the government alleges that the unlawful acts occurred and, at least, Mr. Baguinben is indisputably an engine room oiler and Mr. Gulliman states that he too has "been an oiler on *F/V San Nikunau*" since he came aboard the in May 2006. Gulliman Decl., ¶ 1. Their testimony as to the activity that occurred on the ship regarding the handling of oily bilge waste and use of the oil water separator are certainly material to the government's charge that bilge waste was "regularly and routinely" discharged into the ocean. To the extent that the government relies on the testimony of other crewmembers of the *F/V San Nikunau* to establish criminal liability, the defendants are correct that testimony of Messrs. Baguinben and Gulliman will potentially impeach these witnesses.

With respect to Mr. Fredricsen, the government alleges that he instructed other crewmembers to lie to the Coast Guard on two occasions both on July 15, 2011, that "only water is pumped overboard from the vessel." Superseding Indictment, ECF No. 22, at Count One, Overt Acts 41 and 42. These acts by Mr. Fredricsen form part of the basis for the underlying charge of conspiracy against the defendants. *Id.* at 7-12. In his declaration, Mr. Fredricsen denies this allegation stating: "That is not true. I told no one to lie but rather to tell what they knew." Fredricsen Decl., ¶ 2. Thus, if deposed, he will potentially provide testimony contradicting the government's factual allegations in these two overt acts. This testimony is certainly material and exculpatory.

12

The government's contention that the testimony of these three crewmembers is not material is undermined, at least as to Messrs. Baguinben and Fredricsen, by the fact that the government believed these individuals had information sufficiently relevant to the criminal activity at issue in the Superseding Indictment to identify them by name in the Agreement on Security with defendant Sanford. Indeed, the government required defendant Sanford to "work with the United States to arrange for the testimony of . . . Mr. Moanatai Fredricsen, [and] Mr. Larry Baguinben," apparently because the government was of the view that the testimony from these crewmembers could be relevant to this case. The government's position now that the testimony of these two crewmembers is not material to the issues in this case is belied by the government's own previous efforts to secure their testimony.

Finally, even if the proffered testimony of Messrs. Baguinben, Gulliman, and Fredricsen is, on its face, plainly material and exculpatory, the government argues at length that the Court should discount it as "highly suspect." Gov't Opp'n Mot. Depose, ECF No. 76, at 6-8. For example, the government indicates that, during a July 23, 2011 interview with the Coast Guard, Mr. Baguinben stated that "Silverio Distor had pumped oily waste water from pipe alley directly overboard," contrary to his denial in the declaration submitted by the defendants. *Id.* at 5. Similarly, the government suggests that Mr. Gulliman's "recently signed" declaration is unreliable because it is not clear he "was actually an oiler on the ship," and Mr. Fredricsen's "self-serving declaration" is suspect because it was "executed after litigation in this matter had commenced." *Id.* at 6-7.

Regarding Mr. Gulliman, the government contends that "according to the Advance Notice of Arrival provided by Defendant Sanford Ltd. to the U.S. Coast Guard for the F/V San Nikunau's arrival into Pago Pago, American Samoa, on July 14, 2011, [Manual] Gulliman is not

13

listed as 'oiler' and rather is listed as a 'crew member.' It is not clear whether Gulliman was actually an oiler on the vessel, thus making his proposed testimony questionable." *Id.* at 6. The defendants do not address this discrepancy in the description of Mr. Gulliman's position in the Advance Notice of Arrival document, but merely reiterate in their reply papers the summary contents of his declaration. Defs.' Reply, ECF No. 79, at 7. Notably, the government has contended that Donato Eulatic is a material witness in this case, even though Mr. Eulatic, like Mr. Gulliman, is also listed as a "crew member" on the Advance Notice of Arrival, rather than having the more specific position of "oiler." Consequently, the general description of a crewmember's position has little probative value as to whether that individual may have material information, particularly in the context where the crewmember has provided more specific information in a declaration. In any event, Mr. Gulliman's precise duties on the ship and whether those duties put him in a position to have personal knowledge of information bearing on the charges in the Superseding Indictment would be a ripe area for examination and clearly bear on his credibility. Ultimately, Mr. Gulliman's credibility is a matter for the jury, not the Court, to decide. For the purposes of this motion, the Court will accept the defendants' representations and Mr. Gulliman's statement in his declaration that he worked in the engine room as an oiler on the *F/V San Nikunau* and, consequently, has personal knowledge pertinent to the pending charges to offer in testimony.

Regarding Messrs. Baguinben and Fredricsen, the government has similarly raised questions about the credibility of the proffered testimony, but the ultimate credibility of the witnesses' potential testimony is not a matter for the Court to decide. The Court must assess, however, whether their testimony is admissible and the government has not asserted that the testimony of any of these witnesses is inadmissible under the Federal Rules of Evidence.

That being said, the Court is well aware that "foreign depositions are suspect and, consequently, not favored," due, in significant part, to the fact that the witness is not subject to the imposition of sanctions of perjury or contempt for testifying falsely or evasively. *Oudovenko*, 2001 U.S. Dist. LEXIS 2549, *9 (denying defense motion to depose foreign employee witnesses where defendant was high-level employee who "may exercise some control over these witnesses" which presents "a heightened risk that an oath will be unable to instill in them a duty to tell the truth even if the truth hurts Oudovenko.") (citing *United States v. Alvarez*, 837 F.2d 1024, 1029 (11th Cir. 1988) ("Foreign deposition testimony, because of the absence of a sanction for perjury, is suspect.")); *United States v. Feijoo-Tomala*, 751 F. Supp. 40, 43 (E.D.N.Y. 1990) (same).

This concern is particularly serious here where the three crewmembers are silent about the reason for their unwillingness to travel with all expenses paid to Washington, D.C. to testify at trial. Yet, not only are the reasons for the witnesses' unwillingness to appear at trial legitimate areas for inquiry, so too are the reasons for any changes in their testimony from the information they provided during interviews with the Coast Guard. In this regard, the Court is mindful of the statements made by one of the three material witnesses at the hearing on February 1, 2012, that he feared for his safety in returning to work for the defendant Sanford after telling the government what he knew. *See* Hr'g Tr., Feb. 1, 2012, at 46:17-47:1 (testimony of material witness Rhyme Distor: "So now I'm just – I'm willing to stay, and I'm scared to go back to my company because we don't have security there. We do not know what will happen to us. So our counsel advise us that we will be asked to go back, come back. But because we are -- we don't know what will happen, we will be in sea, that's what I'm scared of. This is my first time having case like this. I don't have any other record in the past. So I am also scared that I am against my

company, and I have -- I might be able to say something, that I am scared to go back to work with them."). Such information may turn out to be relevant for the jury to assess the credibility of the crewmember witnesses, aided by instructions regarding the appropriate inferences that may be drawn from these circumstances. Finally, the Court is confident that the jury "is fully competent to take such concerns into account when weighing the credibility of their testimony." *See, e.g., United States v. Jefferson*, 594 F. Supp. 2d 655, 671-73 (E.D. Va. 2009) (court granted defense motion to depose foreign witnesses despite "legitimate concerns that the prospective deponents might commit perjury with impunity when giving testimony by deposition abroad") (citing *United States v. Mills*, 760 F.2d 1116, 1121 (11th Cir. 1985) ("[F]ugitive depositions are not only available but are sometimes wisely authorized despite their suspect veracity and the lack of a perjury sanction'.")); *United States v. Gonzalez*, 488 F.2d 833, 839 (2d Cir. 1973) ("The jury is well able to weigh [a fugitive's] testimony . . . .").

In view of the witnesses' declarations, the superseding indictment, as well as the security agreement between the government and defendant Sanford, the Court finds that the defendants have met their burden of showing that the proffered testimony of Messrs. Baguinben, Gulliman, and Fredricsen is material and exculpatory. Accordingly, the Court will permit the depositions of these three crewmembers.

To ensure that the depositions are fair, timely and productive, the Court will require compliance with the following conditions: First, the parties shall confer and agree on the location, date and time of the depositions. The Court agrees with the government that since defendant Sanford controls the ship on which the crewmembers are working, the timing of the deposition need not take place in April. Nevertheless, despite the fact that no trial date has yet been set, the Court directs that the depositions be scheduled as promptly as possible. Second, the

depositions shall take place at a location that allows the opportunity for examination by all parties in accordance with the scope and manner provided under the Federal Rules of Criminal Procedure. Third, to address the government's valid concern that the depositions of the witnesses may be of no value because the witnesses "would likely assert their Fifth Amendment privilege in the depositions," Gov't Opp'n Mot. Depose, ECF No. 76, at 4 n.1, prior to the scheduling of the depositions, the defendants shall supplement the declarations filed by the three crewmembers with fully executed and notarized affidavits by Messrs. Baguinben, Gulliman, and Fredricsen waiving any Fifth Amendment privilege associated with their testimony regarding the events detailed in the Superseding Indictment. Fourth, to ensure that Messrs. Baguinben, Gulliman, and Fredricsen appear for their scheduled depositions, defendant Sanford shall file an affirmation, by April 13, 2012, expressing its intention to comply fully with the requirements detailed in paragraph 16 of its Agreement on Security with the government, which provides, *inter alia*, that defendant Sanford retain the witnesses' passports and provide for their transportation and lodging. Gov't's Opp'n Mot. Depose, ECF No. 76, Ex. F, ¶ 16. Finally, the parties shall confer and file, by April 13, 2012, a joint report detailing the safeguards in place for the attendance of the individual defendants at the scheduled depositions to ensure their continued presence in this jurisdiction for trial and their compliance with the conditions of their release.

### B. Depositions of the Former Chief Engineers of the *F/V San Nikunau*

In addition to the three crewmembers, the defendants additionally seek to depose two prior Chief Engineers that served on the *F/V San Nikunau*: Alejandro Braceras and Raymond Ian Scott. Mr. Braceras is an Argentine national and served as relief chief engineer for defendant Pogue in 2004 and 2005. Mr. Scott is an Australian national and "served as relief chief engineer for about two months, five years ago." Defs.' Mot. Depose, ECF No. 70, at 4-5.

As an initial matter, the defendants have not supplied the Court with declarations from these individuals attesting to their unavailability or to the evidence that they may provide. The Court notes that affidavits or declarations are not necessary in a motion seeking depositions pursuant to FED. R. CRIM. P. 15(a)(1). *See United States v. Vilar*, 568 F. Supp. 2d 429, 438 (S.D.N.Y. 2008) ("[T]he overwhelming majority of courts in this Circuit—and in other circuits—have rejected arguments that the movant must produce an affidavit from the proposed deponent in order to establish his or her unavailability."). Nevertheless, in this case, the lack of such declarations is indicative of the lack of foundation for the pre-trial depositions of these two individuals. Notably, the defendants concede that they "have not had the time to obtain declarations from Mr. Braceras or Mr. Scott and have been unable to contact them." Defs.' Mot. Depose, ECF No. 70, at 5. Given that the defendants have had no contact with Messrs. Braceras and Scott, the defendants' representations as to the evidence that Messrs. Braceras and Scott will provide, and to their alleged unavailability, is pure speculation. *See Straker*, 567 F. Supp. 2d at 180 (The party seeking a deposition must "make some showing, beyond unsubstantiated speculation, that the evidence exculpates him," quoting *Kelley*, 36 F.3d at 1124); *Warren*, 713 F. Supp. 2d at 4 ("A witness who resides abroad and outside the reach of a court's subpoena power is not automatically 'unavailable' without a further showing that he or she will not testify in court."). Indeed, it is unclear what good faith basis, if any, the defendants have regarding the information that Messrs. Braceras or Scott would provide given that they have yet to locate and interview them. *See Kelley*, 36 F.3d at 1124 (stating that the purpose of depositions in criminal matters is "not to provide a method of pretrial discovery"). The lack of support for the defendants' position alone warrants denial of the defendants' request to depose the former Chief Engineers.

Even assuming, *arguendo*, that the defendants' representations as to Messrs. Braceras and Scott's potential testimony are accurate and substantiated, the defendants have failed to demonstrate that their testimony is material and exculpatory. The defendants state that Mr. Braceras would testify that "while he was aboard, no bilge waste was pumped directly overboard, that he operated the [oil water separator ("OWS")] system and that the ship's bilges were generally dry, so the OWS system was not used often. He will also testify that his Oil Record Book entries were true and correct." Defs.' Mot. Depose, ECF No. 70, at 4. Mr. Scott would similarly testify that for the two months that he served as a relief Chief Engineer nearly five years ago, "no bilge waste was pumped directly overboard, and that his Oil Record Book entries were true and correct." *Id.* at 5.

As the government notes, "[t]he government has not charged Defendant Sanford Ltd. with any crime based upon the actions of Braceras or Scott. Defendants Pogue and Ong Vano are only charged based upon their conduct, and not the conduct of Braceras or Scott." Gov't's Opp'n Mot. Depose, ECF No. 76, at 3. Thus, it remains unclear what testimony Messrs. Braceras and Scott could provide that will be relevant to the proceedings before the Court. It is true that their alleged testimony would contradict the testimony of another witness, Rhyme Distor, who will allegedly testify that oily waste was discharged from the vessel on every voyage. That said, the testimony of Messrs. Braceras or Scott alone is not material and exculpatory in regards to the defendants' liability for the specific charges in the Superseding Indictment that occurred in 2010 and 2011, or other times when defendants Pogue and Vano served as chief engineer.

## IV.   CONCLUSION

For the reasons explained above, the defendants' Motion to Depose Unavailable Witnesses, ECF No. 70, is DENIED IN PART and GRANTED IN PART. The defendants may

schedule, at a mutually agreeable time and location, and upon their own cost, and compliance with the conditions set forth herein, the depositions of Messrs. Larry Verbe Baguinben, Manual Gulliman and Moana Tai Eric Fredricsen. The defendants' request to depose Messrs. Alejandro Braceras and Raymond Ian Scott, however, is denied. An appropriate Order shall accompany this Memorandum Opinion.

**SO ORDERED.**

**DATED: APRIL 10, 2012**

/s/ *Beryl A. Howell*
BERYL A. HOWELL
United States District Judge